UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IN THE MATTER OF THE SEARCH OF A
BLACK SAMSUNG SMARTPHONE
CURRENTLY STORED IN THE
PERSONAL PROPERTY LOCKER AT THE
KENNEBEC COUNTY CORRECTIONAL
FACILITY IN AUGUSTA, MAINE

No. 1:23-mj-00166-JCN

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Michael Bickford, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for a black

SAMSUNG smartphone telephone currently stored in the Kennebec County Correctional facility

secured personal property locker in Augusta, Maine (hereinafter the "Cellular Device"). This

affidavit and accompanying application is part of an ongoing drug trafficking investigation.

2.      I am conducting an investigation into the drug trafficking activities of Kyle

Demchak. As discussed in more detail below, generally, my investigation relates to the

trafficking of cocaine and cocaine base. I have probable cause to believe that the Cellular Device

contains evidence of communications and records concerning the operation of Demchak's drug

trafficking activities.

3.      I have been employed as a Task Force Officer of the Drug Enforcement

Administration ("DEA") since 2018.  I am currently assigned to the DEA's Bangor, Maine

Office within the New England Field Division.  As a DEA Task Force Officer, I have received

extensive training pertaining to narcotic investigations and investigations into the unlawful

distribution of illegal drugs in violation of Title 21, section 841, et seq. of the United States

Code. I have conducted or participated in, among other things, surveillance, undercover

transactions, the execution of search and arrest warrants, debriefings of informants and confidential sources, and reviews of taped conversations relating to narcotics trafficking. I have also assisted in the execution of numerous drug-related searches and arrest warrants. I know that distributing and possessing with intent to distribute cocaine is a felony offense under Title 21, section 841 of the United States Code, as is conspiring to do so.

4.      I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers.

<u>ITEM TO BE SEARCHED</u>

6.      The Cellular Device that I seek authority to search is more particularly described as follows:

a.      A black SAMSUNG brand smartphone bearing the words IMEI: 357644120861236 on the back side, seized from the person of Kyle Demchak following a traffic stop on May 12, 2023, and currently secured at the Kennebec County Correctional Facility personal property locker.

Photographs of the Cellular Device are attached as Exhibit A.

2

ITEMS TO BE SEIZED

7.      I have probable cause to believe that in the Cellular Device are the following

items of evidence:

> Contact lists, drug customer lists, business records, address and telephone lists,
> digital photographs, digital videos, personal calendar entries, travel logs, payment,
> delivery receipts, e-mail messages, text messages, voice mail messages, internet
> search queries, internet history lists, Facebook messenger chat logs, and GPS
> coordinates contained on the device which are evidence of offenses set forth in
> Title 21, United States Code, Section 841, et seq. and which are seizable pursuant
> to Federal Rule of Criminal Procedure 41.

> Computer hardware, software, and data contained on the device, which are
> evidence of offenses set forth in Title 21, United States Code, Section 841, et seq.
> and which are seizable pursuant to Federal Rule of Criminal Procedure 41.

FACTS SUPPORTING PROBABLE CAUSE

**Background**

8.      On May 12, 2023, I was contacted by Deputy Curtis of the Kennebec County

Sheriff's Office who advised me of a traffic stop made by a patrol deputy where a significant

amount of cocaine had been located.

9.      I searched Kennebec County arrest records and found that earlier in the day on

May 12, 2023, Deputy Racean Wood conducted a traffic stop in the town of Rome. On that date,

Deputy Wood was conducting stationary traffic enforcement in Rome, Maine.

10.      At approximately 1:11 p.m., he observed a 2018 Kia Forte traveling at a high rate

of speed. Using his radar, he determined the vehicle was traveling 61 miles per hour (mph) in a

posted 30 mph zone. The deputy also noted that the vehicle's inspection expired in 2022 and had

a defective driver's side headlamp.

11.      Deputy Wood initiated a traffic stop based on the violations he observed. During

the stop, Deputy Wood made contact with Kyle Demchak who was the operator of the black Kia

3

Forte. Deputy Wood was familiar with Demchak due to previous law enforcement contacts with him. Demchak had a male passenger in his vehicle who was identified as Timothy Freeman.

12.    When speaking to Demchak, Deputy Wood found that Demchak was acting differently than previous contacts he had with him. Deputy Wood noted that Demchak spoke "swiftly" and often spoke so fast that he was unable to comprehend his words, and often slurred his words together. Based on his experience and training, Deputy Wood suspected Demchak was under the influence of narcotics. During that conversation, Demchak told Deputy Wood that he was on Federal Probation.

13.    Deputy Wood asked Demchak to step out of the car and speak with him further. During that conversation, Deputy Wood asked Demchak what he had in his pockets. In response to that question, Demchak stated money and his phone. Demchak pulled out his phone, later identified as the Cellular Device, and the money to show Deputy Wood.

14.    Deputy Wood then advised Demchak to stand at the back of the vehicle while he spoke with the passenger, Timothy Freeman. While speaking with Freeman, Deputy Wood learned Freeman was on Maine State Probation. Freeman's probation conditions included prohibitions against using alcohol or possessing firearms. When asked if he would test positive for drugs, Freeman admitted he may test positive for cocaine.

15.    Deputy Wood spoke with Demchak again and asked Demchak if there were any drugs or contraband in the vehicle. Deputy Wood also advised that it would be in Demchak's best interest to be honest.

16.    Demchak stated that he may have a little "coke" in the backseat of the car. Deputy Wood escorted Demchak to the back seat area of the vehicle. Demchak reached in the vehicle and removed a bag which he then handed to Deputy Wood.

4

17.     Based on his experience and training, Deputy Wood believed the substance in the bag was consistant with cocaine.

18.     Once Demchak handed Deputy Wood the bag of suspected cocaine, Demchak ran from the scene despite instructions to stop. Deputy Wood saw Demchak run across private property and then stop at the wood line approximately 100 yards away.

19.     At this point, Deputy Wood secured Freeman in his patrol vehicle. Deputy Wood then observed Demchak walking back towards him. Demchak repeatedly stated he was sorry.

20.     Deputy Wood secured Demchak and placed him in his patrol car. He removed Freeman from the patrol car and had him sit on the hood of his patrol car.

21.     Deputy Wood advised Freeman of his Miranda rights and Freeman agreed to speak with Deputy Wood. Freeman stated he had been homeless and had only spent one night with Demchak. He denied that the drugs were his.

22.     Deputy Wood eventually searched the vehicle and located several bags containing both cocaine hcl and cocaine base (crack cocaine). While searching the car, Deputy Wood heard Demchak calling to him at which time he (Demchak) stated Freeman had nothing to do with the drugs and that they were all his (Demchak's).

23.     Deputy Wood seized approximately 431 grams of suspected cocaine base and approximately 392 grams of suspected cocaine hcl. The substances field tested positive as cocaine base and cocaine, respectively.

24.     Based on my experience and training as a DEA Agent, the amounts seized are consistent with an intent to distribute as opposed to personal use quantities.

25.     Both Demchak and Freeman were arrested and transported to the Kennebec County Correctional Facility.

<u>TRAINING AND EXPERIENCE</u>

26.     Through my training and experience, I know that drug traffickers commonly use phones to conduct operations and that they use cell phones and other communication capable devices to arrange and record the sale and purchase of narcotics.  I know that these arrangements are usually accomplished via phone calls, text messages, instant messages, messenger apps, and emails.  I also know that Internet browsing history, GPS location data, drug sale logs, photos and videos will contain evidence of the drug trafficking operation and help to identify the user of the device and their role in the operation. Based on the foregoing, I have probable cause to believe, and I do believe, that the seized Cellular Device contains the above-noted evidence of this drug trafficking operation.

27.     Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug trafficking event in the days and weeks prior to an event and that co-conspirators are often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant to determine the whereabouts of the narcotics. Based on my training and experience, drug traffickers usually attempt to minimize to law enforcement the amount of time they were involved in their trafficking activities and that these individuals were usually involved for weeks and months longer than they claim.

28.     Based on my training and experience, my involvement in this investigation, and conversations with other law enforcement agents who conduct narcotics trafficking investigations, I know searches of cellular telephones have yielded evidence of contact and association between and among narcotics traffickers, customers and associates, including the items described above. Based upon the facts described above, there is probable cause to believe that Demchak is involved in the distribution of narcotics and a search of the Cellular Device

6

described above would likely produce evidence of associations, drug customers, and drug suppliers.

29.     The Cellular Device is currently secured in the personal property locker at the Kennebec County Correctional Facility in Augusta, Maine. In my training and experience, I know that the Cellular Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Cellular Device was first seized by investigators.

## DRUG INVESTIGATION COMMONALITIES

30.     Based on my training and experience, I know the following:

a.  traffickers in controlled substances often utilize cellular telephones that are held in the name of other living or fictitious persons and change telephone numbers frequently in order to limit law enforcement officials' ability to identify and track suspects' call histories by utilizing apps such as "Text Now," "Pinger," and "Google Voice."

b.  traffickers in controlled substances often utilize cellular telephones to store contact information of co-conspirators.  This information can then be shared with other co-conspirators to assist in the flow of communication amongst the group.

c.  traffickers in controlled substances often utilize computers and cellular telephones to use the Internet to research the price and availability of illegal controlled substances, and to acquire, pay for, and keep records of drug-involved purchases. I know that traffickers in controlled substances also utilize code words for quantities and types of drugs that are being purchased, sold, and/or transferred in effort to avoid detection by law enforcement officials.

d. traffickers in controlled substances often utilize cellular telephones to share photographs with co-conspirators, including photographs of controlled substances that they want to purchase. This practice is common when someone in the organization is utilizing a co-conspirator to purchase drugs on their behalf.

e. electronic devices, such as cellular telephones, computers, and other electronic storage media can store information for long periods of time. This information can sometimes be recovered with forensic tools. Additionally, I know that most cellular telephones have the capability to access the Internet and therefore can be used by individuals to access their email accounts.

f. computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.

## TECHNICAL TERMS

31.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Cellular telephone:  A cellular telephone is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice

8

communications, cellular telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  GPS:   A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user who is driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation.

c.  Internet:  The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can

sometimes be recovered with forensics tools. There is probable cause to believe that things that
were once stored on the Device may still be stored there, for at least the following reasons:

    a.   Based on my knowledge, training, and experience, I know that computer files or
remnants of such files can be recovered months or even years after they have been
downloaded onto a storage medium, deleted, or viewed via the Internet.
Electronic files downloaded to a storage medium can be stored for years at little
or no cost.  Even when files have been deleted, they can be recovered months or
years later using forensic tools. This is so because when a person "deletes" a file
on a computer, the data contained in the file does not actually disappear; rather,
that data remains on the storage medium until it is overwritten by new data.

    b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or
slack space—that is, in space on the storage medium that is not currently being
used by an active file—for long periods of time before they are overwritten.  In
addition, a computer's operating system may also keep a record of deleted data in
a "swap" or "recovery" file.

    c.   Wholly apart from user-generated files, computer storage media—in particular,
computers' internal hard drives—contain electronic evidence of how a computer
has been used, what it has been used for, and who has used it. To give a few
examples, this forensic evidence can take the form of operating system
configurations, artifacts from operating system or application operation, file
system data structures, and virtual memory "swap" or paging files. Computer
users typically do not erase or delete this evidence, because special software is

typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e.  Based on my knowledge, training, and experience, I know that computer files can be shared between multiple electronic storage devices through various techniques to include physical file transfers via USB or other cables; physical file transfers via portable hard drives, USB thumb drives, SD cards, or other portable storage media devices; email; social media messaging applications. Therefore, files found on one device may be found on other devices owned by the same person.

33.  *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the

    attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34.     *Nature of examination.* Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit the examination of the devices

consistent with the warrant. The examination may require authorities to employ techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of the devices to human inspection in order to determine whether it is evidence

described by the warrant.

35.     *Manner of execution.* Because this warrant seeks only permission to examine the

devices already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the

Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

I submit that this affidavit supports probable cause for a search warrant authorizing the

examination of the Cellular Device described in Attachment A to seek the items described in

Attachment B.

Michael Bickford
Task Force Officer
United States Drug Enforcement Administration

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date:   Jun 02 2023

City and state:   Portland, Maine

*Judge's signature*

Jon D. Levy Chief U.S District Judge
*Printed name and title*

13